case. My name is Jason, sir. Federal defenders of San Diego, we represent Mr. Higginbotham on this matter. This case presents three issues. I'm going to argue two of the claims to your honor this morning. The first one involves an ineffective assistance of counsel claim. As argued in the opening brief, Mr. Higginbotham was provided… And he did pretty good, didn't he? Got him off on two counts. He did, but he provided bad advice with regard to that third count and that's the reason why we're here today. That's the principal reason why Mr. Higginbotham is now alleging ineffective assistance of counsel. Mr. Brodsky, the defense counsel in this case in state court, told him when he first met him up through the proceedings before trial and at trial that you were guilty of no more than misdemeanor battering if you did not intend to cause the injury to Ms. Degan when you dragged her out of that apartment. There was never a contest that Mr. Higginbotham did not drag her. There was never an issue as to whether or not he in fact touched her and did that. He conceded that and was willing to take responsibility for it as evidenced by his attorney's statement. The problem is Mr. Brodsky never told Mr. Higginbotham that the issue he was arguing, the position he had, was untested, that there was no case law on it, that it was unsupported, and that it was based only on his interpretation of 273.5 of the California Penal Code. He never told him it would have to be litigated. He never told him there was a risk that if you testified to dragging Ms. Degan out of the apartment, you could be convicted of felony or continuing to do it. Kagan I guess there are two pieces of this. If he had done research, what would he have found out? He would have found the earlier case about the child. Waxman Correct, Your Honor. Kagan And Atkins actually supports his position, right? Waxman No. Atkins actually does not support his position. Kagan I think it very strongly supports his position, actually. Waxman Atkins, I believe, discussed the application of Section 7 of the California Penal Code, which defines the term willfully, which is the second fact or piece of evidence Mr. Brodsky would have found had he researched. And willfully is defined as not requiring any specific intent to cause injury. That's very clear. Kagan But this statute and the other statute are not battery statutes. They don't say you have to willfully use force. They say you willfully have to inflict corporal injury. Waxman Correct. Kagan So how can you not have to inflict injury? It says so. That's what the crime is. The crime isn't using force or touching somebody. It's inflicting corporal injury. So you must have – and that is what I understood Atkins to say. You don't have to prove the with traumatic – you don't have to prove the traumatic – whatever the phrase is. But you do have to prove that you inflicted corporal injury. Waxman With all due respect, Atkins – Kagan And knowingly did so. Waxman Right. I think willfully in Atkins – Atkins says something here, and it's on – it's in the opinion of page 358. And it says the word willfully are oftentimes causing confusion in certain areas of the law. It's clear in the statute in question. And this is, of course, dealing with 273.5b, which is identical to the statute in the warrant. Kagan And their conclusion is that he didn't have to prove an intention to cause a permanent harm or whatever the traumatic injury – with traumatic – whatever the language is there. Waxman Atkins specifically says that you don't need specific intent to cause the injury. That's what Atkins says. And it actually says that the word willfully, when used here, is – while – Kagan It's not what it says. Waxman In other aspects, it's very clear in the statute protecting the child class contained in the statute. So had Mr. Barofsky done the research, which there's no question he didn't do – he several times over, once at the jury instructions – it's not twice, I'm sorry – during the jury instructions, or just before closing arguments, after Mr. Higginbotham had already testified and was prepared to testify by Mr. Barofsky, he started dragging Ms. Deegan in and out of the apartment. And the judge in Chambers questioned his tactics, questioned his – Kagan My understanding of Atkins, to go back to Atkins, is it says there the crime was willfully inflicts upon any child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition. And what they held is you don't have to prove that he intended to cause a traumatic condition. It's exactly what they held. There's no need to be found of deliberate intent to cause a traumatic condition, but only the more general intent to inflict upon a child any cruel or inhuman corporal punishment or injury. So you did have to prove an intent to inflict upon the child any cruel or inhuman corporal punishment or injury. And the same would be true here. So if he had researched, that's what he would have found. You don't have to prove an intent to have the resulting traumatic condition, but you do have to prove, because it's what the crime is, an intent to inflict corporal injury. Now, Thurston ends up somewhere else, which I don't understand. But if you had researched Atkins, that's what you would have found out. But I believe the intent here is a general intent. It's not a specific intent. Mr. Brodman was the one who said that. But what's the difference between a general and a specific intent in this context? In this context, Mr. Brodsky was arguing that Mr. Higginbotham didn't intend to cause the injuries. The only thing he intended to do was grab her by the ankles and pull her out of the bathroom. But if you have a battery statute where the substantive act is using force, you have to willfully use the – you have to intend to use the force, right? Right. Okay. That's called a general intent because you don't have to intend to hurt them, to injure them. But here, the substantive offense is inflicting corporal injury. So that's what you have to intend. That's a general intent. That's how Atkins uses it. And we're not arguing that it's a general intent offense. The trouble is Mr. Brodsky told Mr. Higginbotham that he specifically had to intend to cause the injury. He bifurcated the statute. So one is a battery and one is an injury. I mean, you may have some argument with respect to risk, but as to whether if he had researched it, he would have had support for his position, he would have. Well, I believe the State court specifically told him there was no law that he was aware of to support that argument that he was making in the jury instruction hearing. And the court specifically said, produce some case law for me. And he said, I would have to do some research. But the trouble is, he hadn't done the research to that point. And I disagree. So maybe you have the adverse problem, which is if he had done the research, he would have found Atkins and he could have argued based on Atkins and he was right. But I don't think Atkins supports his position. And with all due respect, I believe the magistrate court said that and the district court also said, you know, there is a case law out there that was in serious disagreement with what his argument was. Yeah, was, were there standard CalGIC instructions on this? There were standard CalGIC instructions. And he had requested a specific one. Was there one on this offense? There was. There was? I believe they gave a standard 273.5 instruction on this, but they didn't include a specific intent instruction. They defined the term willfully in a separate instruction, which, as I indicated, under California code, says you don't have to have specific intent to cause the injury. That was what was instructed to the jury. Now, because Mr. Higginbotham wasn't told about this and was told that he was only guilty of a misdemeanor battery, which was punishable by no more than a year in custody. But you know, assault is a specific intent crime. Not under 273.5 with the term willfully. Yeah, you know, this whole system of, of, you know, general and specific intent is very confusing. And, I mean, did you know that bank robbery is a general intent crime? I believe I did, but I agree, it's very confusing. Judge Ely made that opinion. And if it's confusing to all of us, imagine how confusing it would be to someone who, like Mr. Higginbotham, is a layperson and wouldn't understand any of this, and the only person he had to rely on was Mr. Brodsky to tell him what was going on. I mean, couldn't he, couldn't he, couldn't he argue from that word willfully, basically? You know, he had to have that intent, and this is what he, what he intended to do and all that. Gives you a lot of latitude. Well, that's what Mr. Brodsky argued, and that's what the court disagreed with based on the definition of willful. Now, the issue here isn't so much the interpretation. It's not at all whether the interpretation, as the state court found, was arguably tenable. The issue is, if it's arguably tenable, what should Mr. Brodsky have told Mr. Higginbotham prior to trial and during the plea negotiations in this case? He should have told him. What was the evidence as far as her injury was concerned? The evidence of her injury. Her face. The face was unrelated to the corporal injury charge. There was an allegation that she was taken and dragged by Mr. Higginbotham out the back door of the apartment about ten feet. After that, she ended up at the end of the driveway. And it was at the end of the driveway that a witness said he saw someone making a stomping motion with their foot, or a kicking motion with their foot. But the jury hung on that count because there was an issue as to identification. It was dark out, and the witness, the neighbor who saw this going on, saw another individual, aside from Mr. Higginbotham, at that end of the driveway. So as far as the injuries to her head and her face and that trauma went, that was unrelated to the corporal injury aspect of the case. The only injury that was alleged and proven with regard to the corporal injury was some road rash abrasion to her lower back and buttocks. And that was what came out of trial, and that's what Mr. Brodsky did in the post. He had his client testify that he dragged her up, grabbed her by the ankle, and pulled her out of the apartment. But that he didn't intend to cause the injury. That wasn't what he wanted to do. He only wanted to grab her and pull her out, which is why he was requesting. The instruction that was given was a person willfully inflicted bodily injury upon another with whom he was cohabiting, and two, that the bodily injury resulted in a traumatic condition, right? I don't recall specifically, but if that was. Oh, I'm reading from it. So the jury did instruct that he had to willfully inflict bodily injury upon another with whom he was cohabiting. And separately, that the result had to be a traumatic condition. Right, but the court separately also instructed on the term willfully, which said you didn't have to specifically intend to create the injury, just that it came about as a result of the battery. That's what the state court's interpretation of the corporal injury crime and charge is, and that's consistent with what I think Mr. Brodsky argued, because he requested a lesser included instruction, a lesser included offense instruction, on misdemeanor battery. Because he bifurcated 273.5 in this case and said, look, we're willing to deal with the battery. He's willing to accept responsibility for the touching, the physicality, the dragging, but he never intended to cause that injury. Now, you know, if that's what Mr. Brodsky told Mr. Higginbotham, which is what he said. Well, there's nothing wrong with Brodsky asking for that instruction. No, but what Mr. Brodsky failed to do. What did he argue? What did Brodsky argue? Brodsky argued several things. On this issue. He argued that, he argued what was called a reactive impulse. That was his phraseology. That's what he used at trial, and the court said he had never heard of a reactive impulse defense, and specifically told Mr. Brodsky he was never going to instruct a jury on any such, such defense. What Mr. Brodsky, I think, began to argue after he began to see the light, after two conferences with the state trial court, at which the trial court told him, I think, you know, you're mistaken. And specifically, it came about during the jury, during the second hearing, the second conference. Just tell me what he, what he said to the jury. Well, he argued to the jury that Mr. Higginbotham didn't intend to cause the injury. Which was the road rash. Right. Which is your, the traumatic condition? Right. Which is also the injury? It's both? Yes. This corporate injury has the physicality and the injury, and he argued that the injury wasn't intended, and that's what the problem was. There's no specific intent to cause the injury. It's a general intent offense to commit the battery. And if there's injury, then it satisfies 273.5. What was an objection made when he, when he made that argument? I believe so. I know the government objected in both hearings before the trial court with regard to his... No, when he was there talking to the jury. I don't recall off the top of my head, Your Honor. I know, I believe there was an objection by the government interposed. Well, you don't know. But I can't tell you specifically. The issue here is, is what did he tell Mr. Higginbotham? Now, before Mr. Higginbotham took the stand and testified, and more importantly, what did he tell him at or around the time of the plea negotiations? Well, you know, if, if the chances of somebody getting acquitted in a case like this is they don't take the stand is pretty remote in the real world. The decision here could, you know, the sentence and the conviction of trial certainly could have been avoided. And had Mr. Higginbotham known that this was an open question and known that by testifying the way he did... By taking the plea, not by going to trial. He would have taken the plea. Exactly. There is evidence in the record that he would have taken the plea. And this is part of the problem, I think, with the state court decision. The state court denied relief on two grounds. One, they found... Well, he, he, when did he say, I mean, what is there to tell us that while this trial was going on that Higginbotham said he'd take a plea? Okay, well, several things, both during and after trial. As the court is well aware, there are objective factors that need to be considered to determine whether or not someone would take a plea apart from their own statement. Mr. Higginbotham filed a declaration during the state appellate proceedings indicating that he would have taken the plea, the 14-year plea offer, had he properly been advised that by dragging Ms. Deegan in, that that was a felony. Well, he said that after the show was over. He never said it during trial because he was constantly being advised by his attorney that you're only guilty of a misdemeanor battery and you're not getting more than a year. And this is a lay person who doesn't know anything about the law. And he relied on his attorney's advice, which he rightfully can do. Well, he knows something about the law. He had two burglary convictions. Well, he didn't know, like Your Honor said, that one was a burglary, but he wasn't aware of how complex the willfully statute or willfully language in this particular statute was. The issue here is, I think you can compare it to the case on Fathavon that the government cited in its reply brief and that I, I, I, in its response and that I cite in my reply brief. It provides a very ready dichotomy that I think illustrates the problem here. In some Fathavon, defense counsel explained to his client that it was an open issue, an open question of law that needed to be litigated. He couldn't guarantee any outcome, but he specifically told the client, hey, there is no law on this. I am not sure what's going to happen. It needs to be litigated. You need to be aware that it can go either way. That's not what happened here. So in those circumstances, how does that interact with the prejudice questions? That in those circumstances, if he didn't take the plea, there's pretty good evidence that he wouldn't have taken the plea. Whereas here, if he, he didn't take the plea because he was misinformed, one can't infer anything from the fact that he thought he was innocent because he thought he was innocent of a differently described crime. Exactly. There was no contesting the fact that he never said he was innocent of the corporate injury charge. He admitted, and on the record, Mr. Brodsky, and these are statements that obviously the Court can use to determine that he would have taken a plea in this case rather than going to trial, because he admitted guilt, Mr. Higginbotham admitted guilt to his counsel pre-trial. That's on page 277 of the excerpt of record. There are interactions between Mr. Higginbotham and Mr. Brodsky prior to trial where Mr. Brodsky is told, hey, I dragged her out of this apartment. It's in his declaration. It's in my client's declaration. These were statements that were known to Mr. Brodsky. Mr. Brodsky never told the Court or argued to the jury that my client never touched Ms. Deegan. Second, Mr. Brodsky told the Court that Mr. Higginbotham was willing to accept responsibility for dragging Ms. Deegan, and that's on page 116 to 118 of the record. I think there's ample evidence here that he was willing to accept responsibility and would have taken a plea had he known his conduct amounted to a felony. Now, the other problems with the state court decision, getting back to your prejudice question, the state court held that Mr. Higginbotham hadn't demonstrated prejudice for two reasons. One, they held that he never objected on the record when the state court withdrew the 14-year offer. In Nunes v. Mueller, this Court specifically held that a state court can't infer anything from that. A defendant such as Mr. Higginbotham in criminal proceedings has every right to rely on his attorney in the trial, during the trial proceedings, and isn't expected to interpose his own objections or make a record for himself for ineffective assistance to counsel when he's relying and expecting effective assistance at that point. Nunes v. Mueller makes that clear, and because it's clear in that case, as well as Sanfantafang, I believe, that is an unreasonable conclusion, an unreasonable decision by the state court and cannot hold water and should be reversed. What was the sentence here again? The sentence was 26 to life, Your Honor. Twenty-six to life. The second basis for the state court denying relief here, based on prejudice, was that Mr. Higginbotham couldn't show he would have taken the offer, and they stated in Ray Alvarez, a state court decision which applies Strickland standards. However, while the state court identified these objective factors that need to be considered, a totality of the circumstances approach, the court never took a look at the evidence, never considered the evidence. And because the state court never afforded Mr. Higginbotham any hearing on his state habeas claim, on a state habeas petition, this court's not bound by any factual conclusions that the state court renders. And the state court claimed that there was no evidence. But that's definitely not true, and the record belies that point. As I indicated, there was no evidence for hearing in the state court. Correct. On the petition for it. And there wasn't here. There wasn't in the magistrate court. So this court isn't bound by any factual conclusions. And the district court didn't rely on the magistrate. The district court did not adopt the magistrate recommendation as it stated the facts. Correct.  You want to save some time? I do, Your Honor. Okay. Thank you. May it please the Court. Lynn McGinnis from the California Attorney General's Office for the Appellee. I want to take a step backward, you know, in this. But the first thing I want to point out is that there's some misrepresentations in the briefs and in part of what Mr. Surr is saying. The only way you get to the conclusion that the evidence shows that Mr. Brodsky told Mr. Higginbotham that he was only guilty of a misdemeanor battery. The only way you get to that conclusion is by going to the evidentiary hearing in the magistrate judge's chambers, believing Mr. Higginbotham and disbelieving Mr. Brodsky. There's nothing in the state court record either. Was there a state court evidentiary hearing? There was no state court evidentiary hearing. And the people maintain their position that, and we know that the magistrate judge rejected that, that that's a failure to develop a factual predicate for purposes of a depa. He didn't ask for one? He didn't ask for one. What he did do is submit declarations in the appellate court in a state habeas proceeding. And it's more than just not asking for an evidentiary hearing. The declarations contained A, nothing that Mr. Brodsky advised Mr. Higginbotham against taking a plea. That was not in either of the declarations that was submitted in the state appellate court. Or B, that Mr. Brodsky told Mr. Higginbotham that he should go to trial because he was only guilty of a misdemeanor battery. And when you get to the evidentiary hearing, and I admit I'm very confused on what the role of the evidentiary hearing is at this point, the magistrate, the district court didn't reject. Well, you know, unlike the state system, we give people hearings. You give them postcards. Well, we did. That's why we have a lot of work that's brought to us through the state, you see. Well, there was a... And then you can complain about it. Well, we're not complaining. I mean, we fought the evidentiary hearing on ADEPA grounds because this case does come under ADEPA. And the problem with... So what, just to go back, you said you were confused about what the district court said, and I'm confused, too. So what did the district court do? Did he decide that he wasn't going to rely on the magistrate judge's conclusions because there shouldn't have been a hearing or because he didn't agree with the conclusions based on the record or what? What the district court did is say that the evidentiary hearing was unnecessary under ADEPA because the decision of the Fourth District Court of Appeal was not an unreasonable application of Strickland and was not contrary to Strickland. And that is the position that we had pushed from the beginning. What you have in the state court record, and I'm not going to stand up and say nothing in the state court record can be interpreted to support Mr. Higginbotham's position because that wouldn't be fair. What you have in the state court record is something that strongly supports the people's position can be interpreted to support Mr. Higginbotham's position. But even if you have a state court record that's 50-50 or 99-1 or whatever, at some point the question is not only whether the state court's interpretation of the facts is wrong, but whether it's objectively unreasonable under the evidence that was presented to the state court. And what happened here is that the state court looked at the trial court record, saw the discussions in Mr. Higginbotham's presence, saw that after Mr. Higginbotham was convicted of a felony he claims in the habeas writ that he never knew he could ever be convicted of, he continued to retain Mr. Brodsky for some period of time, looked at the fact that the declarations deliberately avoided tying in the any advice that was given to any failure to take a plea of bargain. All Mr. Higginbotham said in his declaration was I was misadvised that this was a misdemeanor. And then in a separate section he says I was offered a plea bargain. There was nothing to even raise a triable issue there for the state court to do. If he was – I'm confused by what you're saying was not in the record at the – in the state court. If the declaration says he was misadvised that it was a misdemeanor, then why isn't that a statement that he was misadvised that it was a misdemeanor? He was not told that there was a risk or an issue as to whether or not there was a possible felony conviction here. There was a statement that he was misadvised of a misdemeanor and then there was a statement about a chambers conference and then there was a statement about a plea agreement being offered, but there was never any statement, even though he had an opportunity to submit this kind of evidence in the state court, that there was never any statement that if he had been properly advised, he would have taken the plea bargain. Now, I – I thought you began, and maybe I'm wrong, by saying that there was nothing in the state court record to corroborate what was later said in the magistrate's hearing that Brodsky advised him that he could only be held guilty of a misdemeanor and not of a felony. There was nothing to the state – and I apologize. I misspoke. And there was nothing in the state court record until this habeas came up in the state court about a year or two after the conviction and he made this declaration. Well, so what? I mean, that's not relevant. There was something in the state court record. Yes, Your Honor. There was something in the state court record, but we're looking at two things here, and I want to make this clear. There's two things. There's, number one, a plea – there was a claim of ineffective assistance based on a failure to take a plea bargain and there was a claim of – Well, it's failure to get some adequate information for which he can make a decision with regard to the plea bargain. Right. And you're now saying, which you didn't say before, that in the record in the state court, there was some evidence that he submitted, which would be a prima facie case, saying that he was not told – he wasn't properly advised as to the risk that he could be convicted of a felony. But what the state court found is that – that – No, but you see, let me just say something about advocacy. I've been sitting here for the last 10 minutes trying to understand your original representation that there was a problem in the state court record which was cured in the magistrate's record and that there was really nothing in – I thought you were telling me that there was nothing in the state court record to indicate that there was really any confusion about the risks to which he was exposed, and now you're saying otherwise. It's very distracting. I apologize. There was – what I meant to say is that there's nothing in the record in front of the superior court at the time that all this went on. What difference does that make? What difference it makes is you have to look at the totality of the circumstances and – Well, I mean, is that – you're talking about recent – about fabrication? Is that what you're talking about? Well, it was the people's position, and then we're going back to the evidentiary hearing where the magistrate judge found that there was a fabrication. Basically, the sequence of events here was that Mr. Brodsky was representing Mr. Higginbotham and Mr. Higginbotham was convicted of this felony offense. Mr. Higginbotham wanted to go to trial, and this came up at the evidentiary hearing. Mr. Brodsky was still representing Mr. Higginbotham on a challenge to one of the prior convictions and continued to represent him past the sentencing on this case without complaint. If that challenge had been successful – and I just want the court to look at this in the light of what's really happening – if that challenge had been successful, then the most Mr. Higginbotham would have gotten for a conviction on count two, which is what he got here, would be nine years, which is double the upper term plus one for the prior. There's every reason – and this is what came up at the evidentiary hearing – putting aside that a lot of defendants like Mr. Higginbotham want to throw the dice and see if the jury will acquit him, even if he knew the jury would never acquit him, there was a lot of reason for going forward and letting the jury even reach a felony charge on count two because if the collateral conviction challenge was successful, he'd get nine years. So what you're saying now, which I don't remember seeing in your briefs, but which is interesting and maybe I missed it, is that the 12 years could have been rejected because even if he were convicted on the felony, he could have gotten less than 12 years if he succeeded in striking one of the priors. Right, Your Honor. And what happened – and it did come up at the evidentiary hearing and especially in the closing arguments – and that's why one of the reasons the magistrate disbelieved Mr. Higginbotham is that despite the fact Mr. Higginbotham had testified he could only be guilty of a misdemeanor with a one-year sentence, Brodsky continued to represent Mr. Higginbotham through a state court evidentiary hearing on the challenge to the prior. You'd think you'd fire your attorney if they, you know, all of a sudden, why didn't you give me the plea bargain? And then when that was rejected and he ended up with a 26-year-to-life sentence instead of the nine years he could have gotten if he was successful on this, then that – and that's where I misspoke and I apologize – that was the first time Mr. Higginbotham ever alleged that Mr. Brodsky told him that he could only be guilty of a misdemeanor when this collateral challenge by Mr. Brodsky was unsuccessful. But aside from all that, you have to look at, again – Are you saying that an ineffective assistant to counsel claim that the defendant has to fire his lawyer before that can be brought? No, what we're saying, Your Honor, is that you look at the objective evidence in the record and when you – what the magistrate did was look at the evidence in the record and listen to the witness. But now we have the district. This goes back to this confusion. The district court, though, didn't rely on any of that. Well, the district court found that the court of – I'm saying that any way you get there, if you want to look at the magistrate's findings or not and what the district court did was say they were unnecessary, they didn't fail to adopt them and I couldn't find any law on what that meant. But if you look back to the court of appeals, this decision which we do under the ADEPA, and like I say, there's evidence in the court of appeals record that cuts both ways. But since it cuts both ways, it's not objectively unreasonable under the ADEPA. And then we defer to – Well, is that true if they had no hearing? I mean, if they have evidence going both ways, and my understanding of California law is that if they deny a habeas in that circumstance, it's on the ground that if you – and there's California case law that says that what they're saying is that if you take sort of a summary judgment standard, right? That if you take the evidence as favoring the defendant, he still loses. So we would have to take it in order to uphold the state court's determination as reasonable. We can't assume that they determined conflicting issues of fact. We have to assume that they decided the issue based on the defendant's version of the facts. Is that not right? Yes, we have to assume that. And if we take the defendant's version of the facts, what we have from the court of appeal is a statement that there are two separate things here. That he was misadvised and that he was told about a plea bargain. Now, the way the state court of appeal reasonably interpreted it is that the misadvice went to whether he would testify or not. There was a defense to the charge that defense counsel put forth was that he didn't intend to drag the victim. What you had here is a defendant that didn't want the plea bargain that once the plea bargain was rejected Mr. Brodsky advised Mr. Higginbotham he had to testify in order to explain how the victim's face got beat up. If he didn't testify, as the court pointed out, he would have gotten a worse result. He was the only one that could testify to this defense that Mr. Brodsky put forth that the dragging was just a reaction because every single other witness who testified testified that he dragged her even farther calling her names and stomped on her and kicked at her and said get off my property. So, our contention is that even if Mr. Brodsky misunderstood the specific intent required for a corporal injury that his advice to testify was sound in light of the fact that Mr. Higginbotham because he didn't want to do that much prison time insisted on going to trial and if he hadn't testified he would have gotten a worse result since he did testify he had a chance of getting acquitted the court of appeal looked at the plea bargain Well, why didn't he have a chance of getting acquitted? The trial court certainly didn't think so he thought he'd gotten up and admitted the crime. Well, the trial court thought he got up and admitted the crime Mr. Brodsky disagreed with that and said he testified that he reacted. Even if a defendant gets up and admits a crime let's take the worst scenario for the court's sake that's not necessarily ineffective assistance of counsel if the defendant refuses to take a plea bargain and by not testifying I guess doesn't this all ultimately turn on whether the defendant was misadvised if the defendant was told that if you get up and testify there's a risk I evaluate the risk however I evaluate it but there is a risk that the judge will interpret the law in X way and that you will be guilty of this felony but if he then it seems to me everything you're saying is right but if he was advised and my understanding is that this is what he's claiming that the law is X and therefore if you get up and testify to what actually happened it would be improper for the judge to allow you to be convicted of anything but a misdemeanor that's his claim and he was not advised of any risk then doesn't his decision to testify have to be evaluated against what he was told and not in the abstract he was insisting on testifying because he understands that even if he testifies the worst thing that's going to happen is he's going to be convicted of a misdemeanor so how can what you said be true what I said can be true because there's no evidence in the trial court record but there is in the habeas record so what does that matter well then the district court the magistrate found a disputed issue and held an evidentiary hearing and held against Mr. Higginbotham so the most you get is an if the magistrate thought was enough to warrant an evidentiary hearing then there was an evidentiary hearing and the magistrate made a credibility finding against Mr. Higginbotham I'm not sure what remedy we're requesting here we had an evidentiary hearing the people disagreed that we needed one but we had one we got the evidentiary hearing the magistrate took more information and found that the evidentiary hearing didn't support Mr. Higginbotham's claim on the state court record you have a statement by Mr. Higginbotham that he was advised to testify you have another statement by Mr. Higginbotham and it's suppose if we thought that based on the state court record that the district I don't know if this is true but the district court was wrong the district court never actually reviewed the magistrate judge's findings on the evidentiary record although he has the authority to do that so then don't we have to remand at that point we could your honor with due respect that judge is deceased now but yes that would be it wouldn't matter because he would be reviewing the cold record anyway it would be one remedy but and it's certainly preferable to springing Mr. Higginbotham out of prison it certainly is one remedy I mean we're not gonna stand on one foot and hop on the other I mean what we're saying is yes this court can determine that and have the evidentiary findings reviewed that is one avenue to take an alternative avenue is to find that on the state court record it was not objectively unreasonable because there was nothing submitted and this is what I meant to say there was nothing submitted to the state court that Mr. Higginbotham if he had been properly advised he would have taken the plea bargain the first time that came up is when the court of appeal in the state had an oral argument on the writ of habeas corpus and told defense counsel you know there's really no tie in here and then Mr. Higginbotham tried to submit a declaration after oral argument in the state court of appeal and under state evidentiary law that was rejected but our position is yes that's one remedy and we still maintain that looking at this record the court of appeal did not unreasonably apply the prejudice prong of Strickland in finding that Mr. Higginbotham had failed to demonstrate prejudice because despite the opportunity to submit a as to whether he took the plea bargain or not because of the advice he didn't say that in his declaration since I only have 21 seconds the last thing I want to point out is on the sofathathong case there are actually two things that came up in sofathathong the first one was unclear law which the defense counsel told the client was unclear the other claim of ineffective assistance was based on the court the claim that defense counsel never told Mr. sofathathong that the Oregon law on aggravated murder was unsettled so there's two separate things here there was advice on one and there was no advice on the other let me ask you something in the information how do you describe these offenses say comma a felony comma a felony without reviewing the record but generally in the information that are charged in California that is how it is done especially on a corporal injury because that can be reduced to a wobbler under California law at any time a misdemeanor it's a wobbler offense so defense counsel actually did try to get it reduced to a misdemeanor under California law and the court denied that what does it mean to willfully inflict corporal injury with resulting traumatic effect other than to willfully inflict corporal injury well as a prosecutor we're in a tough position here it was a very strong creative argument by defense counsel based on the unclear state it has to be right actually doesn't it have to be right doesn't Adkins say that doesn't Adkins actually say that directly it seems to say that however California court in Thurston Thurston says otherwise but if he had gone and researched at that point he would have found out he was right he would have found out and this is another thing what would the research have done he would have told Mr. Higginbotham well there's a case that seems to support my position but there's nothing really on this particular point and the way the California courts have determined willfully is that the willful applies to the  what's the act here the act is the dragging no it's not it's inflicting corporal injury it isn't a crime of dragging it's a crime of inflicting corporal injury and that's what Mr. Brodsky argued and I thought it was a very strong and well thought out argument appellate counsel argued it on the appeal it ultimately didn't prevail and it can be read either way California courts have since held that's not what it means the California Supreme Court hasn't weighed in on the issue you weren't the prosecutor here were you I did the evidentiary hearing but no I wasn't the trial prosecutor alright I have two questions one if it were shown that he was in fact misadvised by his attorney and if it were shown that he would have accepted the plea if he were not advised would you say that would be enough for a reversal I would say that if the magistrate had made that finding and the district court had adopted that finding we would still be arguing that under the ADEPA the state court decision should have controlled I mean we're going two layers here if that were the case on a direct appeal like this Blaylock case that's cited where there's misadvice and then there's clearly a but for and it's shown sure I mean if you give misadvice and advise someone against a plea bargain and the person says if there's a hearing and it's determined factually but factually the magistrate found that didn't happen that way I was just trying to get to that if those two things were were established then they'd have a case wouldn't he he would have a case if he were on direct appeal but if the state appellate court had looked at it a different way and it depends on obviously what the state appellate court had done and looked at it and applied Strickland correctly and reached a conclusion that was not objectively unreasonable under the facts that were before the state court then the state court would still have to the federal courts would still have to uphold that under the state of the ADEPA my other question is a very little collateral thing how do you get ADEPA out of AEDPA I don't know I was wondering the same thing thank you your honor hadn't thought of that oh you still here I see you packing up as your honor my stomach is rumbling too no no no I can go for weeks without eating you look fantastic then first with regard to the government argument about the limitation based upon ADEPA I think the reason they get there is they take how do you get ADEPA out of it it's the death penalty actually they take the D.E. in death people call it ADEPA some people call it death I think it depends where in the country you're from or from New York I'm just wondering how you can possibly get ADEPA out of AEDPA I think people just leave that first E silent then take the D.E. out of death and stick the E in the other place exactly alright first our position is that the government has waived any objection at this point they certainly never briefed it in their appeal they haven't argued it to whether or not the evidentiary hearing should have gone forward or should not have gone forward which the magistrate court held I have the objection the evidentiary hearing did not favor your client well that depends on how you conclude and view the facts at the evidentiary hearing the findings of fact were that based on more evidence a tendency to disbelieve his statement as to what he would have done with regard to the plea now the district court then says well I'm not paying any attention to that I'm just looking at what the state court did if we say alright reviewing what the state court did if we were to say we think that what they did was on their record was not reasonable then what do we do we then go back we then remand to the trial court to take into account the evidentiary hearing not at all you have a few options that is one option the other option is under Taylor v. Maddox at 366 F3rd 992 which was written by Judge Kaczynski in May of this year it was a similar situation where the state court didn't consider a factual record that had been made that's not a similar situation it's a different situation I think the it would be that they did consider what was made but that they they were wrong given the fact that they had to take the record because they didn't have a hearing they had to take the record as most favorable to the defendant now if they're wrong about that could the trial court nonetheless hold an evidentiary hearing and say no I'm going to decide these disputed issues in fact hold the hearing and decide them against your client the state court didn't do that I understand the state court didn't do it but can the trial court can a district court then do it well that's my point this case deals with state courts but I think it's analogous to what happened here the district court didn't make any factual findings with regards to what happened in the magistrate hearing and I think that permits this court now to go back and look at those facts and make its own determination well that doesn't make sense I mean I don't see how it flows out of Maddox at all well I see it as being analogous I see this court being in a position where it can look at a factual record and for the sake of economy we just don't do that that's what we have district courts there for but we're not arguing as was noted in Maddox that we're not arguing facts that aren't already on the record the facts that are provided but in Maddox the difference is once the state court has done the state court's done and the federal courts don't go sending things back to the state court that they failed to do but here we have the district courts trying to make a decision on this and the district court took one route to it if we disagree with that one route that doesn't substitute for every rule we have about how district courts and appellate courts relate to each other our position is that if this court wants to it should consider the facts presented in the magistrate hearing because it's not like we have an argument for the first time you keep saying that but you're not tell me why I think based on Maddox you disagree do you mean we make a factual finding instead of the district court is that what you're saying I think you may because the record is already in existence well the records are lots of times in existence but we don't make factual findings that obviously is up to your honor in some cases it can be done do you have any authority that says that aside from Taylor v. Maddox which is obviously being disagreed with not off the top of my head your honor I certainly would be more than willing to provide it but I think if the record is sufficient and the facts are there and we're not arguing anything anew this court certainly is in a position to consider it at the very least a remand would be in order I think and if that's fine obviously anything other than a denial is going to be acceptable for Mr. Higginbotham but I do think the facts are there for this court to consider in addition I wanted to point out that on the except of record at 194 in the state supreme court's denial it's a postcard denial as your honor noted but it doesn't deny it on any perceivable grounds or failure to allege particularity or somehow failure to plead it properly so I don't think I think this ties in with the argument that he didn't present or try to make a factual record in the state court I think he did and I think he did so successfully and with regard to throwing the dice this isn't a case of throwing the dice Mr. Higginbotham was ready and willing to accept responsibility for the dragging had he known what was going on he would have taken that deal I think the objective factors weren't there witnesses that saw him kick her in the face there weren't witnesses that saw her kick her in the face the witnesses saw him drag her out and he testified to that as well how about those people that were in the room weren't there other people in the room when she supposedly broke the toilet well the only testimony that came up with regard to the facial injuries was from a neighbor who testified that he saw a figure someone who wasn't wearing a shirt who was bald and there was another individual at the house at that time other than Mr. Higginbotham that matched that description who was at the end of the driveway given the bad lighting the poor lighting he couldn't tell for sure who it was and that was the reason what did he say when he dragged her out they were drunk she had broken the bathroom he was upset and was yelling at her according to the testimony it was that I don't want you in this house get out but that doesn't lead to an inference that he's going to stomp and kick her he's a nice sweet guy why would he do that I think it was a bit of alcohol based on the record I've seen but the point is here Mr. Higginbotham didn't have an opportunity to make a meaningful or informed decision about the offer that was being made because he didn't know that by testifying the way he did he'd be admitting guilt on a felony what did the indictment say the information with regard to whether it was a felony the government said it did state that it was a law break I don't care just tell me what the indictment said in count 2 with regard to the corporal injury to a roommate it doesn't say anything about whether it's a felony or not your honor did the others say whether it's a felony or not I didn't see anything in count 1 it doesn't say felony information the only thing that it talks about is first priors and second priors and even there it doesn't mention felony this is on page 1 and 2 he knew the government was claiming it was a felony that is the point the point is that his lawyer was telling him that although the government is claiming it's a felony it's not that's exactly the point and that's what we're urging Mr. Higginbotham thank you the matter is adjourned until 9am tomorrow morning thank you your honor they wouldn't let me back with the acorns I'm sorry they wouldn't let you what they wouldn't let me back inside the building with the acorns oh my god pick up oh the papers not acorns oh the papers there's no acorns out there put you on the papers put you on the papers put you on the papers I have no acorns put you on the papers put you on the papers
judges: Hug, Pregerson, Berzon